## BERRIEN v. THE STATE.

PER CURIAM. 1. Where the Governor, under and by virtue of an act of the General Assembly approved August 13, 1915 (Acts 1915, p. 56), which provides for the discount of the Governor's warrants in order to secure funds with which to pay the salaries of the teachers in the common schools of the State, issues a warrant payable to the superintendent of the public schools of Murray County, which is delivered to the State superintendent of schools, who sends it to the county superintendent to whom it is made payable, with the request that he indorse and return it, and this is done, and the State superintendent then delivers the warrant to A, who is to discount the warrant and remit the net proceeds to the county superintendent to whom the warrant is made payable, and where A actually discounts the warrant, the money is the property of Murray County. When such warrant made payable to the superintendent of public schools of Murray County was delivered to such superintendent, the State of

Georgia parted with the title to the warrant, and the County of Murray was entitled to its use and control, and when through the State superintendent of schools the same was discounted, the title to the cash proceeds was in the County of Murray. The State of Georgia, after the delivery of the warrant to the county superintendent, could not have legally exercised any control over it or the proceeds arising from the discount.

(a) Under the facts stated above, the State superintendent was acting for Murray County when he delivered the warrant; and in a prosecution against A for larceny after trust, an allegation in the indictment that the money was entrusted to him by the superintendent of schools of Murray County would be supported by proof that the money was delivered to him by the State superintendent of schools.

2. Where, under the act referred to in the preceding headnote, the Governor advertises for bids for school warrants and the bid of B is accepted, and, after having been indorsed by the several county superintendents to whom they were made payable, a number of these warrants are turned over to A by the State superintendent of schools, with instructions to discount them at a certain rate, and A, according to a course of dealings between him and the State for about two years, sends the warrants to B, the party whose bid is accepted, and B pays the draft, and the proceeds of the draft pass into the hands of A, this is a bailment and not a sale of the warrants to A.

3. Under the facts as stated in the preceding headnotes, A was acting as agent for the County of Murray. Whether or not A was also in a sense acting for the State of Georgia need not be considered in so far as it affects this case.

4. The act referred to in the first division expressly authorizes the Governor to draw warrants " in favor of the State school superintendent or of the several county school superintendents," and " it shall be lawful to sell at a discount said warrants to any person, bank, or banking institution, the said sale to be made at the lowest possible rate of discount." Where warrants are so issued and delivered to such officers under provisions of the act, such officers have express power to sell and assign the warrants and collect the money arising from the sale. Having such power, it is competent in making the sale to create a bailment of the money.

(a) The case differs from *Hoyt* v. *State*, 50 *Ga.* 313. In that case the alleged bailor was the agent of the State, without express statutory authority to create the bailment. In this case we are dealing with the powers of the payees in warrants who have express power to negotiate the paper.

5. Where the State superintendent of schools sends to the superintendent of schools of Murray County a warrant payable to him as such county superintendent, and issued by the Governor under the act referred to in headnote 1 above, and where such county superintendent of schools indorses the warrant and returns it to the State superintendent, who delivers it to A to be by him discounted and the proceeds sent to said county superintendent, and where A actually discounts the warrant and appropriates the net proceeds to his own use, evidence of such facts

will support an indictment which alleges that the superintendent of schools of Murray County entrusted A with the money, and that it was the property of Murray County.

6. Where one of the counts of an indictment alleges that the accused, after having been entrusted with a certain common-school warrant for the purpose of selling and discounting it, did sell and discount it and did fraudulently convert the proceeds thereof to his own use, and did otherwise dispose of the proceeds without the consent of the owner thereof and of the person so entrusting him with it, and without paying them "said money and the full market value thereof on demand, which demand was made," and where the evidence shows that he did fraudulently convert the proceeds to his own use, a conviction under that count would be authorized, although the evidence did not show a demand. The allegation, without paying "said money and the full market value thereof on demand, which demand was made," may be treated as surplusage. *Cody* v. *State*, 100 *Ga.* 105 (28 S. E. 106) ; *Keys* v. *State*, 112 *Ga.* 392 .(37 S. E. 762, 81 Am. St. R. 63), and cit. Compare *Birt* v. *State*, 1 *Ga. App.* 150 (57 S. E. 965) ; *Goodman* v. *State*, 2 *Ga. App.* 438 (58 S. E. 558) ; *Innes* v. *State*, 19 *Ga. App.* 271 (91 S. E. 339)*.*

7. Where an indictment contains several counts and there is a verdict of guilty on two of them, each of the two counts being based upon a different section of the code, and each of the code sections providing for a different punishment, and where the verdict does not fix separate terms of punishment for the different counts, but only fixes one maximum and minimum term, which is within the limits of punishment that could be imposed under either count; in the event that the Court of Appeals should decide that the evidence did not authorize a conviction under one of the two counts, it would not be mandatory upon that court to reverse the judgment of the lower court in overruling the motion for a new trial. The judgment overruling the motion for a new trial may be affirmed if the conviction on either count is legal. The above ruling is supported by the principles ruled in the following cases. *Stewart* v. *State*, 58 *Ga.* 577; *Parham* v. *State*, 3 *Ga. App.* 468 (60 S. E. 123) ; *Gailliard* v. *State*, 16 *Ga. App.* 195 (84 S. E. 837) ; *Dohme* v. *State*, 68 *Ga.* 339.

8. Where the Court of Appeals certifies a question of law based on an expressed statement of facts, this court will not look to the record to ascertain whether such facts are borne out by the record, or whether there are other facts that affect the question for decision.

ON MOTION FOR REHEARING.

The ruling indicated in the 4th division is substituted for a former ruling made in answer to the 4th question propounded by the Court of Appeals. The ruling contained in the 8th division is additional to the rulings first made in answer to the questions propounded by the Court of Appeals.

No. 3483. SEPTEMBER 10, 1923. REHEARING DENIED SEPTEMBER 27, 1923.

The Court of Appeals (in Case No. 13893) certified the following questions to the Supreme Court for decision, as necessary to a proper determination of the case:

" 1. Where the Governor, under and by virtue of an act of the General Assembly approved August 13, 1915, which provides for the discount of the Governor's warrants in order to secure funds with which to pay the salaries of the teachers in the common schools of the State, issues a warrant payable to the superintendent of the public schools of Murray County, which is delivered to the State superintendent of schools, who sends it to the county superintendent to whom it is made payable, with the request that he indorse and return it, and this is done, and the State superintendent then delivers the warrant to A, who is to discount the warrant and remit the net proceeds to the county superintendent to whom the warrant is made payable, and where A actually discounts the warrant, is the money, the net proceeds of the warrant, the property of Murray County or the property of the State of Georgia?

" (a) Under the facts stated above, was the State superintendent acting for the State or for Murray County when he delivered the warrant to A; and, in a prosecution against A for larceny after trust, would an allegation in the indictment that money was entrusted to him by the superintendent of schools of Murray County be supported by proof that the money was delivered to him by the State superintendent of schools?

" 2. Where, under the act referred to in the preceding question, the Governor advertises for bids for school warrants, and the bid of B is accepted, and, after having been indorsed by the several county superintendents to whom they are made payable, a number of these warrants are turned over to A by the State superintendent of schools, with instructions to discount them at a certain rate, and A, according to a course of dealings between him and the State for about two years, sends the warrants to B, the party whose bid is accepted, and B pays the draft, and the proceeds of the draft pass into the hands of A, is this a bailment or a sale of the warrants to A?

" 3. Under the facts as stated in questions 1 and 2, for whom was A acting as agent?

" 4. Can the State superintendent of schools, or a superintendent of the schools of a county in this State, create a bailment of money which is the proceeds of warrants discounted for the purpose of raising money with which to pay the teachers in the public schools of the State?

"5. Where the State superintendent of schools sends to the superintendent of schools of Murray County a warrant payable to him as such 'county superintendent, and issued by the Governor under the act referred to in question 1 above, and where such county superintendent of schools indorses the warrant and returns it to the State superintendent, who delivers it to A to be by him discounted and the proceeds sent to said county superintendent, and where A actually discounts the warrant and appropriates the net proceeds to his own use, will evidence of such facts support an indictment which alleges that the superintendent of schools of Murray County entrusted A with the money, and that it was the property of Murray county?

"6. Where one of the counts of an indictment alleges that the accused, after having been entrusted with a certain common-school warrant for the purpose of selling and discounting it, did sell and discount it and did fraudulently convert the proceeds thereof to his own use, and did otherwise dispose of the said proceeds without the consent of the owner thereof and of the person so entrusting him with it, and without paying to them 'said money and the full market value thereof on demand, which demand was made,' and where the evidence shows that he did actually convert the proceeds to his own use, would a conviction under that count be authorized unless the evidence showed a demand?

"7. Where an indictment contains several counts, and there is a verdict of guilty on two of them, each of the two counts being based upon a different section of the code, and each of the code sections providing for a different punishment, and where the verdict does not fix separate terms of punishment for the different counts, but only fixes one maximum and minimum term, which is within the limits of punishment that could be imposed under either count, in the event that this court should decide that the evidence did not authorize a conviction under one of the two counts, would it be mandatory upon this court to reverse the judgment of the lower court in overruling the motion for a new trial?"

*Watkins, Russell & Asbill,* for plaintiff in error.

*George M. Napier, attorney-general, John A. Boykin, solicitor-general, Seward M. Smith, assistant attorney-general,* and *E. A. Stephens,* contra.